**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

CHRISTINE ANN DOLLAR,

        Plaintiff,

vs.

SMITHWAY MOTOR XPRESS, INC.,
SMITHWAY MOTOR XPRESS CORP.,
a Nevada Corporation,

        Defendants.

No. C09-3043-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING PARTIES'
CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT**

———————————

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    *A.  Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . 10
    *B.  Dollar's Claims Under The FMLA* . . . . . . . . . . . . . . . . . . . . . . 12
        *1.  Overview of the FMLA* . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        *2.  Dollar's FMLA Interference Claim* . . . . . . . . . . . . . . . . . . 16
            *a.  Serious Health Condition* . . . . . . . . . . . . . . . . . . . 17
            *b.  Notice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
            *c.  Denial of benefits* . . . . . . . . . . . . . . . . . . . . . . . . . 22

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Christine Dollar, who suffers from depression, was fired by her employer after submitting a series of medical notes excusing her from work due to her depression. The central issue raised in the parties' cross-motions for partial summary judgment is whether Dollar's firing violated the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654.

## I. INTRODUCTION AND BACKGROUND

### A. Factual Background

The summary judgment record reveals the following undisputed facts. Defendants Smithway Motor Xpress, Inc. and Smithway Motor Xpress Corp. (collectively "SMX") are corporations which previously had their principal place of business in Fort Dodge, Iowa.[1] SMX is a national over-the-road trucking carrier. Plaintiff Christine Ann Dollar was employed by SMX on two occasions. She was first employed by SMX in the 1990's. On March 22, 2006, Dollar began her second stint of employment with SMX. Dollar was a non-driver exempt employee. Dollar eventually held the position of Driver Manager.

SMX provides a handbook to its non-driver exempt employees which explains the various employee benefits as well as its employment policies and requirements. The handbook states that employees with less than three years of employment receive one week of vacation a year. It also contains the following explanation of SMX's "Pay Continuation for Illness or Disability":

> On your employment date, you will be allocated forty-eight (48) days in a pay continuation bank established for you. The days in this bank are for you to use when you have an illness

---

[1] Since the events giving rise to this lawsuit, SMX has been purchased and moved its base of operations to Tennessee. SMX still maintains some operations at its Fort Dodge facility.

or disability that causes you to be absent from work for a day or more. (This policy will be administered in conjunction with the General Medical Leave and Family and Medical Leave policies.)

This pay continuation bank will be replenished at each January 1 of the following calendar year at the rate of up to twelve (12) days. (There can be no more than 48 days in the bank at the beginning of each calendar year.)

You must be employed six (6) months before you will be eligible to use pay continuation. You will not be paid for unused pay continuation at termination.

Employee Handbook at 17, Plaintiff's App. at 125.

SMX's employee handbook further details an employee's ability to take unpaid leave under FMLA, providing in relevant part:

Under the Family and Medical Leave Act of 1993 (FMLA), eligible employees will be granted up to a total of 12 work weeks of unpaid leave during a "rolling" 12-month period for one or more of the following reasons:

. . . .

To take medical leave when the employee is unable to work because of a serious health condition.

Employees are eligible for FMLA leave when they have worked for Smithway Motor Xpress, Inc [sic] a total of at least 12 months and have worked at least 1,250 hours during the previous 12 months.

You are required to give as much notice as is practical, preferably at least thirty (30) days, of your intentions concerning family or medical leave. With respect to foreseeable medical treatments, you are to make reasonable

efforts to schedule the treatments so as to not unduly disrupt the company's operations.

In situations where it is medically necessary, you may take leave intermittently or on a reduced leave schedule. You may be required to temporarily transfer to an equivalent position which better accommodates your need for recurring periods of leave.

Employees must first exhaust accrued paid leave (sick or vacation) before utilizing unpaid FMLA leave.

Medical certification will be required when leave is taken based on a serious health condition and recertification will be required for any extensions, or at four week intervals, whichever is sooner.

You will be expected to report periodically (at least every 2 weeks) on the status of your leave and your intention to return to work.

          . . . .

You will be required to provide a certification to resume work before you return to work from any leave based on your own serious health condition.

          . . . .

Service time with the Company shall continue during the leave and every effort will be made to reinstate you to the same position or, if unable to do so, one of equal status at the same rate of pay upon returning to work. Limitations for benefits and pay practices during leaves of absences apply here.

Employee Handbook at 23-24, Plaintiff's App. at 131-32.

Dollar missed work on August 10, 2006, and again on August 11, 2006. After which her supervisor, Terry Wieland, spoke to her about her absences and the importance of her workplace attendance. Dollar explained to Wieland that she was absent because she had not taken her medication for depression for a number of days. This was the first time that Wieland knew Dollar was taking medication for depression. Dollar was not disciplined.

On September 21, 2006, Dollar had her six month job performance evaluation. Although the issue of her work attendance was noted, her work performance was found to be acceptable and she received a $25 a week raise in pay. At the time of her six month job performance evaluation, Dollar was a customer service representative in SMX's Van Division. Shortly after that evaluation, Dollar was transferred to SMX's Flatbed Division as a Driver Manager. Todd Bird and Al Kellett became Dollar's supervisors. Dollar, however, continued to work in the same office in her new position as a Driver Manager.

Dollar was again absent from work on March 8, 15 and 16, 2007, and absent for half a day on March 14, 2007. Dollar provided medical excuses from her doctor for her absences on March 14, 15, and 16, 2007. Dollar's supervisor, Bird, spoke to her about her absences but Dollar was not disciplined.

On Sunday night, June 10, 2007, Dollar was experiencing insomnia as well as a bout of depression. As a result, she went to the emergency room at Trinity Regional Hospital in Fort Dodge, Iowa. There she was examined, given some medications to help her sleep and told to contact the mental health center the following day. On June 11, 2007, before Dollar's work shift started, she called her supervisor, Al Kellett, and left a voice mail message explaining that she would not be at work, that she was going to the doctor and would call in later. Dollar then went to the North Central Iowa Mental Health Center where she was seen by James B. Burr, a licensed mental health counselor. Dollar

was diagnosed with depression, and Burr wrote her a medical excuse which stated: "Christine Dollar is being seen at the Mental Health Center for depression. She should stay off work through Tuesday June 19th." Medical excuse note at 1, Plaintiff's App. at 155. The next day, Dollar left Kellett a message that she had been given a medical excuse to be off work until June 19, 2007. Dollar also spoke by telephone to Kellett once between June 11, 2007, and June 19, 2007. During that conversation, Kellett told Dollar that she was no longer going to be working in the Flatbed Division as a Driver Manager and that Tom Nelson, SMX's Human Resources Manager, had another position in the company for her. Kellett also told Dollar that Nelson was on vacation but that Nelson was expecting her to be back at work on June 25, 2007.

On June 18, 2007, Dollar had a counseling session with Rhonda Wykoff, a Registered Nurse and Licensed Mental Health Counselor. The following day, on June 19, 2007, Dollar was seen at the Mental Health Center by Dr. Lee Berryhill, a psychiatrist. Dr. Berryhill gave Dollar a medical excuse to be off work until July 9, 2007. On June 20, 2007, Dollar's father died. His funeral was to be held on Monday, June 25, 2007. On the morning of June 25, 2007, Dollar called SMX and spoke to Nelson. She told Nelson about her father's death. Nelson responded by telling Dollar that, after her bereavement leave, she would be expected back to work on June 29, 2007, and that her new position with SMX would be as a Driver Recruiter.[2] At this point, Dollar told Nelson that she had the medical excuse form Dr. Berryhill to be off work until July 9, 2007. Nelson responded by telling Dollar that if she couldn't come back to work until then that he could not guarantee she would have a job.

---

[2]The Driver Recruiter position has the same pay and benefits as a Driver Manager Position but is located in a different department at SMX.

The following day, Dollar went to SMX with a friend, Karen Bryne, in order to drop off her two medical releases. Dollar met with Nelson and gave him her two medical releases. Nelson told her that he needed her to return to work in the very near future or he could not guarantee she would have a job. In response, Dollar told Nelson that she had a medical appointment on July 3, 2007, and might know more after that appointment. Nelson told Dollar to contact him after that appointment. On June 27, 2007, and again on July 2, 2007, Dollar had counseling sessions with Wykoff.

On the morning of July 3, 2007, Dollar realized that since her medical appointment that day was not until 4:30 p.m., she might not be back from the appointment in time to call Nelson during business hours. Dollar telephoned Nelson and explained this to him. Nelson told Dollar that he was going to be gone on July 4th and July 5th, but that she should call him after her medical appointment and leave him a voice mail message indicating when she would be returning to work. Later that day, Dollar was seen by Diann Crane, an Advanced Registered Practical Nurse, at Trinity Regional Medical Center. Crane gave Dollar a medical excuse addressed to Nelson which stated: "Please excuse Christine from work until 7-30-2007. She is not ready to return to work on July 9, 2007." Medical excuse note at 1, Plaintiff's App. at 179.

On July 5, 2007, Dollar mailed the medical excuse to Nelson. The following day, on July 6, 2007, Dollar called Nelson to inquire whether he had received Dollar's medical excuse from Crane. Nelson told Dollar that he had received her latest medical excuse but that he needed her back to work immediately. In response, Dollar informed Nelson that she was not ready to return to work. Nelson responded that Dollar's return to work release date was not going to work out and that he needed to fill the position immediately. Nelson then terminated Dollar's employment with SMX. From June 10, 2007, until July 6, 2007, Dollar was on paid medical leave.

On August 1, 2007, Dollar received a release to return to work from Crane. Dollar never applied for employment with SMX after her termination on July 6, 2007. Dollar did not believe that SMX would re-employ her since she had been fired by the company and had never been told by anyone at SMX that the company would rehire her after she could resume working. Dollar does not believe that she will ever be able to handle the stress of her former Driver Manager position at SMX. Dollar, however, does believe that she could handle the stress and other job requirements of the Driver Recruiter position at SMX.

## B. Procedural Background

On July 1, 2009, Dollar filed her Complaint against SMX. In Count I, Dollar contends that SMX interfered with her right to take FMLA leave and that her termination was in retaliation for her exercising her rights under the FMLA. In Count II, Dollar asserts an Iowa common law claim that she was wrongfully discharged in violation of Iowa public policy for seeking leave she was entitled to under the FMLA. SMX filed a timely answer to Dollar's Complaint in which it denied these allegations.

Dollar filed a Motion for Summary Judgment on July 16, 2010 (docket no. 10). In her motion, Dollar asserts that her FMLA interference claim should be granted because she can establish that she was entitled to FMLA leave at the time of her firing and provided SMX with sufficient notice of her need for FMLA leave, but was nonetheless fired. SMX filed a timely resistance to Dollar's motion on August 13, 2010. In its resistance, SMX contends that Dollar has not established that she was suffering from a serious medical condition, as defined under the FMLA, at the time of her termination. Thus, SMX argues that Dollar is not entitled to summary judgment on her FMLA interference claim.

8

On July 20, 2010, SMX filed its own Motion For Summary Judgment (docket no. 11). In its motion, SMX contends that because Dollar's depression has left her unable to return to her previous position as a Driver Manager with the company, she has not suffered any damages which are recoverable under FMLA. Dollar filed a timely resistance to SMX's motion on August 2, 2010. In her resistance, Dollar concedes that while she could not have returned to her position as a Driver Manager with SMX, she could have handled the position of Driver Recruiter, the position she was internally transferred to while on sick leave. Accordingly, Dollar argues that a genuine issue of material fact has been generated on the issue of whether she has suffered economic damages as a result of SMX's actions. SMX filed a timely reply brief on August 13, 2010. In its reply, SMX argues that Dollar was not entitled to reinstatement to the Driver Recruiter position because she never actually held that position during her employment with SMX and that the Driver Recruiter position is not an "equivalent" position to the Driver Manager position.[3]

Plaintiff Dollar was represented by John P. Roehrick of Roehrick Law Firm, P.C., Des Moines, Iowa. Defendant SMX was represented by Stuart J. Cochrane of Johnson, Kramer, Good, Mulholland, Cochrane & Driscoll, P.L.C., Fort Dodge, Iowa, and Isham B. Bradley of Western Express, Inc., Nashville, Tennessee.

## II.  LEGAL ANALYSIS

---

[3]Neither party has sought summary judgment on Dollar's Iowa common law claim that she was wrongfully discharged in violation of Iowa public policy for seeking leave she was entitled to under the FMLA.

### A.  Summary Judgment Standards

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id.* 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which

show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. However, the court does not weigh the evidence, assess credibility, or determine the truth of the matters presented. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004); *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

The court recognizes "that summary judgment is disfavored in employment discrimination cases." *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005); *see Woods v. Perry*, 375 F.3d 671, 674 (8th Cir. 2004) ("[S]ummary judgment should be used sparingly in employment discrimination cases . . . ."); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) ("[S]ummary judgment should seldom be used in employment discrimination cases."). This is so, "[b]ecause discrimination cases often turn on inferences rather than on direct evidence. . . .," *E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001) (*en banc*) (citing *Crawford*, 37 F.3d at 1341;

*Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999)), and because "intent" is generally a central issue in employment discrimination cases. *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.*, 32 F.3d 376, 378 (8th Cir. 1994)); *see Simpson*, 425 F.3d at 542 (noting summary judgment is disfavored in employment discrimination cases because they are "'inherently fact-based.'" (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 806 (8th Cir. 2003))). Nevertheless, even in employment discrimination cases, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). The court will apply these standards to the parties' cross-motions for partial summary judgment.

### B. Dollar's Claims Under The FMLA

Dollar claims that SMX violated the FMLA by terminating her employment based on her absences resulting from her depression for which she should have been given FMLA leave. Accordingly, because this case centers on the FMLA, a brief overview of that act is necessary before analyzing the parties' arguments.

### 1. Overview of the FMLA

The FMLA was created to "balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity." 29 U.S.C. § 2601(b)(1). The FMLA "entitles eligible employees to take a total of twelve weeks of leave during a twelve-month period due to 'a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Throneberry v. McGehee Desha County*

12

*Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)); *see Murphy v. FedEx Nat'l LTL, Inc.*, ---F.3d---, 2010 WL 3341233, at *2 (8th Cir. Aug. 26, 2010); *Estrada v. Cypress Semiconductor, Inc.*, ---F.3d---, 2010 WL 3220363, at *4 (8th Cir. Aug. 17, 2010); *Scobey v. Nucor Steel-Ark.*, 580 F.3d 781, 785 (8th Cir. 2009); *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 471 (8th Cir. 2007).[4] Under the FMLA, a "serious health condition" is defined as "'any 'illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider.'" *Murphy*, ---F.3d---, 2010 WL 3341233, at *2 (quoting 29 U.S.C. § 2611(11)); *see Scobey*, 580 F.3d at 785; *Phillips v. Mathews,* 547 F.3d 905, 909 (8th Cir. 2008). Furthermore, "[w]hen an employee completes her FMLA leave, she is generally entitled to be restored to the position she occupied before she took leave." *Throneberry*, 403 F.3d at 977 (citing 29 U.S.C. § 2614(a)(1));*see Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002) ("'[U]pon return from FMLA leave, employees are entitled to reinstatement to the same or an equivalent position without the loss of benefits . . . .'") (quoting *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 851 (8th Cir. 2002)).

Because the FMLA grants valuable leave and restoration rights to eligible employees, it also secures these rights against unlawful infringement by prohibiting employers from discriminating against employees for exercising their rights to take FMLA leave. *See Rask*, 509 F.3d at 471; *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th

---

[4]In addition to allowing leave due to an employee's own serious medical condition, the FMLA permits employees to take leave for any of the following additional reasons: (1) the birth of the employee's child; (2) "[t]he placement with the employee of a son or daughter for adoption or foster care, and to care for the newly placed child"; or (3) to care for the employee's spouse, child, or parent suffering from a serious health condition. 29 C.F.R. § 825.200 (1995).

Cir. 2006); *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). Specifically, the act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. 29 U.S.C. § 2615(a)(1). As the Eighth Circuit Court of Appeals has explained:

> "[t]here are two types of claims under the FMLA: (1) 'interference' or '(a) (1)' claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA and (2) 'retaliation' or '(a)(2)' claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights.

*Scobey*, 580 F.3d at 785 (quoting *Phillips,* 547 F.3d at 909-10); *see Estrada*, ---F.3d---, 2010 WL 3220363, at *4. The court of appeals has recognized that "[c]onfusion often arises as to whether an employee's FMLA claim 'is really about interference with his substantive rights, not discrimination or retaliation.'" *Stallings*, 447 F.3d at 1051 (quoting *Kauffman v. Fed. Express Corp.,* 426 F.3d 880, 884 (7th Cir. 2005)). "'The difference between the two claims is that the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent.'" *Wisbey v. City of Lincoln*, 612 F.3d 667, 675 (8th Cir. 2010) (quoting *Stallings*, 447 F.3d at 1051). Another difference between an interference and a retaliation claim is that retaliation claims are analyzed using the burden-shifting framework in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *See Phillips v. Mathews,* 547 F.3d 905, 912 (8th Cir. 2008) ("Because Phillips does not have direct evidence of retaliation, we analyze her FMLA retaliation claim under the *McDonnell Douglas* burden-shifting framework."). The Eighth Circuit Court of Appeals has specifically rejected using the *McDonnell Douglas* burden-shifting framework when analyzing an interference claim under the FMLA. *See Stallings*, 447 F.3d at 1051 n.3;

*Rankin v. Seagate Tech., Inc.*, 246 F.3d 1145, 1148 (8th Cir. 2001). As the court of appeals explained in *Stallings*:

> In an interference claim, an "employee must show only that he or she was entitled to the benefit denied." *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003) (stating that the burden to establish an interference claim is less than that of a retaliation claim, which requires a showing that the employer's actions were motivated by an impermissible retaliatory animus). This court has recognized that an employee can prove interference with an FMLA right regardless of the employer's intent. *Throneberry* [ *v. McGehee Desha County Hosp.*], 403 F.3d [972,] 979 [ (8th Cir. 2005)]. An employee can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason connected with his FMLA leave. *Id.* "[E]very discharge of an employee while [he] is taking FMLA leave interferes with an employee's FMLA rights. However, the mere fact of discharge *during* FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights." *Id.* at 980 (emphasis added). Thus, where an employer's reason for dismissal is insufficiently related to FMLA leave, the reason will not support the employee's recovery. *Id.* at 979 (holding that strict liability does not apply to an (a)(1) claim).

*Stallings*, 447 F.3d at 1051 (footnote omitted).

In this case, although Dollar asserts both a retaliation and an interference claim under the FMLA, she has sought summary judgment only on her interference claim. Since SMX also seeks summary judgment, in its favor, on Dollar's FMLA interference claim, the court turns to consider the merits of that claim.

### 2. Dollar's FMLA Interference Claim

As a preliminary matter, it is necessary to discern precisely what FMLA right or rights Dollar alleges SMX violated or interfered with. The FMLA requires that after

employers provide employees with up to twelve weeks of leave, upon completion of this leave, the employee be restored to the same or an equivalent position, 26 U.S.C. § 2614(a). Dollar alleges that SMX interfered with her right to reinstatement. In order to establish her interference claim, Dollar must prove each of the following five elements:

> "1) [Dollar] was an "[e]ligible employee," 29 U.S.C. § 2611(2); 2) [SMX] was an "[e]mployer," 29 U.S.C. § 2611(4); 3) [Dollar] was entitled to FMLA leave, 29 U.S.C. § 2612(a)(1); 4) [Dollar] gave [SMX] notice of her intent to take FMLA leave, 29 U.S.C. § 2612(e)(1); and 5) [SMX] denied [Dollar's] FMLA benefits to which she was entitled. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir.2007) (citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir.2003))"

*Beekman v. Nestle Purina Petcare Co.*, 635 F. Supp.2d 893, 909 (N.D. Iowa 2009) (quoting *Schoonover v. ADM Corn Processing*, 2008 WL 282343, at *12 (N.D. Iowa 2008)); *see Beatty v. Custom-Pak, Inc.*, 624 F. Supp.2d 1045, 1052 (S.D. Iowa 2009).

Here, there is no dispute that Dollar qualifies as an eligible employee as SMX had employed her for over twelve months and for at least 1250 hours of service during the preceding year. *See* 29 C.F.R. § 825.110 (1995).[5] There is also no dispute that SMX qualifies as an employer under the FMLA because it was a business that employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. *See* 29 C.F.R. § 825.104 (1995).

---

[5]Although significant amendments to the FMLA regulations became effective on January 16, 2009, *see Scobey,* 580 F.3d at 785, 785 n.2, 788, 788 n.5, because the events giving rise to this lawsuit occurred in 2007, prior to enactment of the amendments, the court will consider and apply the 1995 regulations in this case. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (holding that regulations cannot be applied retroactively unless the power to promulgate retroactive rules "is conveyed by Congress in express terms.").

The parties' initial dispute here centers on the third element. Specifically, SMX contends that Dollar has not established, on the summary judgment record before the court, that she was suffering from a serious health condition within the meaning of the FMLA and therefore she has not proven that she was entitled to take leave under the FMLA. Thus, the court must first address the issue of whether Dollar's depression constitutes a "serious health condition" within the meaning of the FMLA.

### a.  Serious Health Condition

As previously noted, the FMLA defines "serious health condition" as follows:

> The term "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves--
> > (A) inpatient care in a hospital, hospice, or residential medical care facility; or
> > (B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11). There is no suggestion that Dollar ever received inpatient care for depression, so her condition plainly fails to satisfy the requirements of 29 U.S.C. § 2611(11)(A). Thus, whether her depression qualifies as a "serious health condition" turns on whether it constitutes "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

The United States Department of Labor's regulations provide a more detailed explanation of what qualifies as a "serious health condition" involving continuing treatment under the FMLA:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:
> . . . .
> (2) *Continuing treatment* by a health care provider. A serious health condition involving continuing treatment by a

17

health care provider includes any one or more of the following:

(i) A period of incapacity (i.e., inability to work, attend school or perform other regular activities due to a serious health condition, treatment thereof, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

    (A) Treatment two or more times by a health care provider . . . or

    (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.
    . . . .

    (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

    (A) Requires periodic visits for treatment by a health care provider . . .;

    (B) Continues over an extended period of time . . .; and

    (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)
    . . . .

    (v) Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

    (b) Treatment for the purposes of paragraph (a) of this section includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations

18

of the condition. Treatment does not include routine physical examinations. . . Under paragraph (a)(2)(i)(B), a regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen). A regimen of continuing treatment that includes … activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave.

.  .  .  .

(e) Absences attributable to incapacity under paragraphs (a)(2)(ii) or (iii) qualify for FMLA leave even though the employee . . . does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three days. For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack or because the employee's health care provider has advised the employee to stay home when the pollen count exceeds a certain level.

29 C.F.R. § 825.114 (1995).

The Eighth Circuit Court of Appeals has applied these regulations and found that "the continuing treatment test for a serious health condition is met if the employee is incapacitated by an illness, injury, impairment, or physical or mental condition for more than three consecutive days and for which he is treated by a health care provider on two or more occasions." *Woods,* 409 F.3d at 990. Therefore, in order to show that she was entitled to FMLA protection under this provision, Dollar must come forward with evidence demonstrating a period of incapacity of at least three consecutive days and related treatment two or more times by a health care provider. SMX argues that Dollar's depression does not meet the FMLA's requirements for a serious health condition because she has not provided medical evidence of her condition in the form of a deposition of her

treating physician. Dollar, on the other hand, contends that her depression does satisfy the definition of serious health condition found in § 825.114. She points out that she was seen on June 11, 2007, by Burr, a licensed mental health counselor, who diagnosed her with depression, and excused her from work for the following week. On June 18, 2007, Dollar had a counseling session with Wykoff, a Registered Nurse and Licensed Mental Health Counselor. On the following day, June 19, 2007, Dollar was treated by Dr. Berryhill, a psychiatrist. Dr. Berryhill further excused Dollar from work until July 9, 2007. On June 27, 2007, and again on July 02, 2007, Dollar had counseling sessions with Wykoff. Given this record, which the court has viewed in the light most favorable to SMX and given it the benefit of all reasonable inferences that can be drawn from these facts, *see Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Quick*, 90 F.3d at 1377, the court concludes that Dollar has established that she was suffering from a serious health condition during the time in question.

### b. Notice

Dollar must also prove that she provided SMX with the required notice in order to establish her interference claim. Under the FMLA, employees "'have an affirmative duty to indicate both the need and the reason for the leave, and must let employers know when they anticipate returning to their position.'" *Scobey*, 580 F.3d at 786 (quoting *Woods,* 409 F.3d at 990-91) (quotation omitted)). As the Eighth Circuit Court of Appeals recently explained in *Murphy*:

> Notice, as the FMLA requires, means that an employee must provide her employer with "enough information to show that [s]he may need FMLA leave." *Woods,* 409 F.3d at 990. While the employee is not required to invoke the FMLA by name, the employee must provide "information to suggest that h[er] health condition could be serious." *Id.*

> Our cases instruct that the adequacy of an employee's notice requires consideration of the totality of the circumstances, *e.g., Scobey,* 580 F.3d at 787, and is typically a jury question, *Phillips,* 547 F.3d at 909.

*Murphy*, ---F.3d---, 2010 WL 3341233, at *7. The court of appeals has further explained that:

> "The employer must be made aware that the absence is due to a serious illness so the employer can distinguish it from ordinary 'sick-days,' or even malingering, as a type of unusual and privileged absence." *Rask,* 509 F.3d at 472. "To hold otherwise would create an unreasonable burden for employers, requiring them to investigate virtually every absence to ensure that it does not qualify for FMLA leave." *Id.*

*Scobey*, 580 F.3d at 786.

On this element, SMX does not dispute that Dollar provided it with adequate notice under the FMLA. At the time that Dollar gave SMX her first two medical excuses on June 26, 2007, SMX was already aware that Dollar was taking medication for depression, knew she had taken leave because of her depression in the past, and knew that she needed more leave for further treatment of her depression. Thus, considering the totality of the circumstances in this case in the light most favorable to SMX, the court finds that Dollar has established that she put SMX on notice that she was requesting FMLA leave.

### c.     *Denial of benefits*

On the issue of the denial of benefits, SMX contends that Dollar has not suffered any damages as a result of its actions because her depression rendered her unable to ever return to her position as a Driver Manager with SMX. Therefore, SMX argues that summary judgment in its favor should be granted because Dollar has suffered no diminution in income or other recoverable damages under the FMLA as a result of its actions. *See Cianci v. Pettibone Corp.*, 152 F.3d 723, 728-29 (7th Cir. 1998) (holding

summary judgment proper where plaintiff employee did not suffer any diminution of income, and incurred no costs as a result of employer's FMLA violation and thus failed to establish that she had a remedy under the FMLA); *see also Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721, 739-40 (2003) (explaining that "the cause of action under the FMLA is a restricted one:  The damages recoverable are strictly defined and measured by actual monetary losses.") (citation omitted).  Dollar concedes that to this day she would be unable to return to her position as a Driver Manager with SMX.  Dollar, however, argues that prior to termination she was transferred to the position of Driver Recruiter.  She further contends that she could have performed the duties of a Driver Recruiter with SMX, but was not given the opportunity to do so because of her termination.  SMX counters that while it may have contemplated transferring Dollar to the position of Driver Recruiter, it never did so, and that, under the FMLA, Dollar would be required to return to the same position that she was in prior to her FMLA leave, the Driver Manager position.  Dollar responds that all that is required under the FMLA is that she be restored to employment in her former position or an equivalent position.  Dollar further argues that the Driver Manager and Driver Recruiter positions are equivalent positions.  SMX disputes this assertion.

After returning from leave under the FMLA, an employee is entitled to be restored to her former position or to an equivalent position with equivalent benefits, pay, and other terms of employment.  29 U.S.C. § 2614.  The FMLA specifically provides:

> Except as provided in subsection (b) of this section, any eligible employee who takes leave under section 2612 of this title for the intended purpose of the leave shall be entitled, on return from such leave -
>
> (A) to be restored by the employer to the position of employment held by the employee when the leave commenced;

> or
>
> (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

26 U.S.C. § 2614.  Regarding an equivalent position, the applicable federal regulation provides:

> (a) An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority.

29 C.F.R. § 825.215 (1995).

Here, the court finds that a genuine issue of material fact has been generated on the question of what position Dollar held with SMX at the time of her termination.  While SMX contends that Dollar occupied the position of Driver Manager at the time of her termination, prior to her termination, Dollar was told by her then supervisor Kellett that she was no longer going to be working in the flatbed division as a Driver Manager and that Tom Nelson, SMX's Human Resources Manager, had another position in the company for her.  When Dollar subsequently spoke to Nelson, on June 25, 2007, he told her that after her bereavement leave, her new position with SMX would be as a Driver Recruiter. Although Dollar was fired by SMX before actually working in the position of Driver Recruiter, given what she was told by Nelson and Kellett, the court finds that a genuine issue of material fact has been generated as to whether Dollar held the position of Driver Recruiter with SMX at the time of her termination.  The significance of this fact is that if, as Dollar argues, SMX failed to restore her to her former position as a Driver Recruiter, a position she further alleges that she could have performed despite her depression, Dollar

has suffered an economic loss resulting from SMX's violation of the FMLA. Thus, because a genuine issue of material fact has been generated as to Dollar's interference claim under the FMLA, both Dollar and SMX's respective motions for partial summary judgment are denied as to that claim.[6]

## III. CONCLUSION

Having found that a genuine issue of material fact has been generated as to Dollar's claims under the FMLA, both Dollar and SMX's respective motions for partial summary judgment are denied.

**IT IS SO ORDERED.**

**DATED** this 15th day of September, 2010.

_Mark W. Bennett_
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

---

[6]This factual dispute also requires the court to deny SMX's motion as to Dollar's retaliation claim under the FMLA.